UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MAHAMED ABDI ROBLE,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, TODD M. LYONS, MARCOS CHARLES, PETER BERG, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF HOMELAND SECURITY, and RYAN SHEA,<br><br>Respondents. | Case No. 25-cv-3196 (LMP/LIB)<br><br>**ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS** |

Nicholas Ratkowski, **Ratkowski Law PLLC, St. Paul, MN**, for Petitioner.

Adam J. Hoskins and Ana H. Voss, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

      Petitioner Mahamed Abdi Roble ("Roble") brings a petition for a writ of habeas corpus, alleging that his immigration detention violates the Due Process Clause of the Fifth Amendment and federal regulations. *See generally* ECF No. 1. The Government[1] opposes the petition. ECF No. 10. Because the Government violated its own regulations in detaining Roble, the petition is granted, and the Government is ordered to release Roble in accordance with this Order.

---

[1] When used in this Order, "Government" refers to the federal officials and entities named as Respondents. Respondent Ryan Shea, the Freeborn County Sheriff, has not participated in these proceedings.

## BACKGROUND

Roble is a Somali national who immigrated to the United States in 1995 as a refugee. ECF No. 8 ¶¶ 4–5. In 1997, Roble became a lawful permanent resident of the United States. *Id.* ¶ 6. But after he was convicted of a drug offense, violation of a no-contact order, and two domestic-assault offenses (one of which was a felony), the Department of Homeland Security ("DHS") commenced removal proceedings against Roble in 2017. *Id.* ¶¶ 7–12. In May 2018, an immigration judge ("IJ") ordered Roble removed from the United States but granted him withholding of removal to Somalia because Roble's half-brother is a prominent Somali political activist who advocates for a secular Somali government and had been "marked for death by Islamist militant groups, including al-Shabaab." ECF No. 8-3 at 19.[2] The IJ explained that Roble's half-brother "has an outstanding *fatwa* against him, which is a religious order condemning him and his family to death." *Id.* Accordingly, the IJ found that based on his relationship with his half-brother, Roble would likely face threats to his life or freedom if he were returned to Somalia. *Id.* at 27.

DHS appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which reversed the IJ's grant of withholding of removal in November 2018, finding that Roble's domestic assault conviction rendered him ineligible for withholding of removal. ECF No. 8-4 at 3–10. The BIA remanded Roble's case to the IJ to consider whether Roble

---

[2]   Withholding of removal is a form of immigration relief available to a noncitizen who "prove[s] it is more likely than not that he will be persecuted if returned to the country of removal." *Salkeld v. Gonzales*, 420 F.3d 804, 808 (8th Cir. 2005).

was eligible for deferral of removal under the Convention Against Torture ("CAT"). *Id.* at 10.³ In January 2019, the IJ denied Roble's application for deferral of removal under CAT and ordered Roble removed to Somalia. *See* ECF No. 8-5 at 2–6. Roble appealed the IJ's decision to the BIA, which reversed the IJ's denial of deferral of removal under CAT in July 2019. ECF No. 8-6 at 3–5. The BIA concluded that Roble would face "a clear probability of future torture" if he were removed to Somalia, given Roble's relationship with his half-brother. *Id.* at 5. The IJ then entered an order removing Roble to Somalia but granting Roble deferral of removal to Somalia under CAT. ECF No. 8-7. The parties agree that Roble's removal to Somalia remains deferred under CAT.

Because United States Immigration and Customs Enforcement ("ICE") was unable to effectuate Roble's removal to a country other than Somalia, on October 21, 2019, ICE released Roble into the community on an Order of Supervision which included various conditions for release. ECF No. 1 ¶ 60; ECF No. 8 ¶ 21; ECF No. 8-8. By all accounts, Roble has remained law-abiding and has complied with the conditions of his Order of Supervision. But on July 18, 2025, Roble was arrested and detained by DHS. ECF No. 8 ¶ 22. Roble was provided written notice that his Order of Supervision had been revoked because "ICE has determined that there is a significant likelihood of removal in the

---

³  Deferral of removal under CAT is available for a noncitizen who establishes "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Mouawad v. Gonzales*, 485 F.3d 405, 413 (8th Cir. 2007) (citation omitted). When a noncitizen is granted relief under CAT, a removal order is entered against the noncitizen, but "notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country." *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020).

reasonably foreseeable future in [his] case." ECF No. 8-10 at 1. Relevant here, the notice further stated: "Since being released, removal from the U.S. is now significantly likely in the reasonably foreseeable future. Based on changed circumstances in your case you will be brought back into ICE custody." *Id.* Roble has been detained at the Freeborn County Adult Detention Center in Albert Lea, Minnesota, since his arrest. ECF No. 1 ¶ 19.

On August 11, 2025, Roble brought a verified petition for a writ of habeas corpus, along with a motion for a temporary restraining order. ECF Nos. 1, 2. Roble alleges that by revoking his Order of Supervision and re-detaining him, DHS violated Roble's due process rights and its own regulations. *See* ECF No. 1 ¶¶ 101–20. The Court ordered the Government to answer the petition no later than August 18, 2025, with any reply by Roble due by August 25, 2025. ECF No. 6. Both the Government and Roble have now provided that briefing. *See* ECF Nos. 10, 11.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Roble offers three reasons why his detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). First, Roble contends that DHS violated its own regulations by failing to provide adequate notice that his Order of

4

Supervision was revoked and failing to sufficiently demonstrate changed circumstances that render his removal significantly likely in the reasonably foreseeable future. ECF No. 1 ¶¶ 106–10. Second, Roble contends that DHS's conduct is arbitrary and capricious under the Administrative Procedures Act ("APA"), largely because DHS failed to follow its own regulations. *Id.* ¶¶ 115–20. Third, Roble argues that his detention violates the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 111–14. The Government asserts that Roble's detention complies with federal regulations and the strictures of due process. *See* ECF No. 10.

Because the Court grants relief on Roble's first argument, it need not address his APA and constitutional claims. *See United States v. Turechek*, 138 F.3d 1226, 1229 (8th Cir. 1998) (quoting *Cnty. Ct. of Ulster Cnty. v. Allen*, 442 U.S. 140, 154 (1979)) ("While federal courts are obliged to decide constitutional questions when necessary to the resolution of a dispute before them, 'they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.'").

I.   **Regulatory Claims**

Not all noncitizens[4] ordered removed from the United States can actually be removed from the United States. Here, although Roble was ordered removed to Somalia, his deferral of removal under CAT precluded the Government from removing Roble to Somalia. *See* ECF No. 8-7. Unless it finds a suitable third country for removal, ICE cannot

---

[4] This Order uses the term "noncitizen" as equivalent to the statutory term "alien." *Nasrallah*, 590 U.S. at 578 n.2.

detain such noncitizens indefinitely. *See Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001). Accordingly, federal regulations require ICE to release a noncitizen ordered removed from the United States on an Order of Supervision if there is no significant likelihood that the noncitizen will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

Once ICE releases a noncitizen on an Order of Supervision, ICE's ability to re-detain that noncitizen is constrained by its own regulations. Relevant here, ICE may re-detain a noncitizen released on an Order of Supervision "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). If ICE elects to revoke a noncitizen's release under 8 C.F.R. § 241.13(i)(2), the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). At that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.*

    a.    **Adequate Notification**

Roble first contends that he was not given adequate notification of the reasons for the revocation of his release. ECF No. 1 ¶¶ 67, 108. ICE's regulations require that when

6

a noncitizen is notified of a release revocation, the "reasons" for that revocation must be stated in the notification. 8 C.F.R. § 241.13(i)(3). Here, the notice to Roble provided that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in [his] case" and that "[s]ince being released, removal from the U.S. is now significantly likely in the reasonably foreseeable future. Based on changed circumstances in [his] case [he] will be brought back into ICE custody." ECF No. 8-10 at 1.

Besides merely parroting the regulatory text governing re-detention, ICE's notice to Roble provides zero reasons as to *what* changed circumstances exist such that Roble's removal is now significantly likely in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i)(2). The notice does not state, for example, that ICE had received or was seeking a travel document for Roble. *See Chavez Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025); *Tran v. Baker*, No. 1:25-cv-01598-JRR, 2025 WL 2085020, at *4–5 (D. Md. July 24, 2025). Nor does the notice state—as the Government now asserts a month after Roble was detained—that ICE was attempting to find a third country to accept Roble. ECF No. 8 ¶ 25. Rather, the notice summarily asserts that changed circumstances render Roble's removal from the U.S. significantly likely in the reasonably foreseeable future. ECF No. 8-10 at 1. That language is not individualized to Roble; in fact, it applies to *any* noncitizen detained under 8 C.F.R. § 241.13(i)(2), since the notice simply mirrors the legal standard applicable to detaining a noncitizen released on an Order of Supervision. Providing a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the "reasons" why

7

Roble's Order of Supervision was revoked. 8 C.F.R. § 241.13(i)(3); *see Sarail A. v. Bondi*, No. 25-cv-2144 (ECT/JFD), ECF No. 9 at 5 (D. Minn. June 17, 2025) (recommending habeas relief when ICE similarly provided a notice that only parroted the regulatory text).

That conclusion makes good sense here. The essence of due process is notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Baldwin v. Hale*, 68 U.S. 223, 233 (1863) ("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. Common justice requires that no man shall be condemned in his person or property without notice and an opportunity to make his defence."). Indeed, DHS's own regulations contemplate that a noncitizen will have an opportunity to "respond to the reasons for revocation stated in the notification" during the initial informal interview after re-detention. 8 C.F.R. § 241.13(i)(3). But Roble cannot be expected to "respond to the reasons for revocation stated in the notification" if the notification does not actually *state* any reasons for revocation. Not only does this scenario border on the Kafkaesque; it is also contrary to law. Because ICE violated its own regulations when it detained Roble without notifying him of the reasons why he was being detained, Roble is entitled to habeas relief.

b. **Whether ICE Demonstrated Changed Circumstances**

More fundamentally, the Government utterly fails to demonstrate to the Court why changed circumstances render Roble's removal significantly likely in the reasonably foreseeable future. "ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has

8

become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).  Once ICE makes that determination, "the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Id.* at 620.  Those factors include:

> [T]he history of the [noncitizen's] efforts to comply with the order of removal, the history of [ICE's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f).

Although Roble has the ultimate burden of proving entitlement to habeas relief, *see Walker v. Johnston*, 312 U.S. 275, 286 (1941), the regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future, *see Hernandez Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("The[] regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed."); *Nguyen v. Hyde*, No. 25-cv-11470-MJJ, 2025 WL 1725791, at *3 n.2 (D. Mass. June 20, 2025).  Absent specific statutory or regulatory language on the allocation of the burden of proof (as is the case in 8 C.F.R. § 241.13(i)(2)), the Court is guided by the "default rule" that the burden falls on the party who "generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (quoting McCormick on Evidence § 337

9

(5th ed. 1999)). Here, it is ICE that "seeks to change the present state of affairs" by re-detaining Roble, so the Court evaluates whether the Government has met that burden.

The Government appears to recognize that Roble cannot be removed to Somalia due to his deferral of removal under CAT. The Government asserts, however, that on August 11, 2025, ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ." ECF No. 8 ¶ 25. That is the only argument the Government makes for changed circumstances, and it falls woefully short. The bare fact that ICE officials in St. Paul have requested third-country removal assistance from ICE headquarters tells the Court nothing about the "history of [ICE's] efforts" to remove noncitizens similarly situated to Roble to third countries, the "ongoing nature of [ICE's] efforts to remove [Roble] and [Roble's] assistance with those efforts," and "the reasonably foreseeable results" of ICE's removal efforts. 8 C.F.R. § 241.13(f). Indeed, the Government does not disclose what "assistance" was requested of ICE headquarters, and it provides no evidence that such assistance will create a "significant likelihood that [Roble] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

Courts faced with similarly paltry evidence of changed circumstances have likewise concluded that the government failed to meet its burden under 8 C.F.R. § 241.13(i)(2). In *Nguyen v. Hyde*, for example, the government asserted that changed circumstances made the petitioner's removal significantly likely in the foreseeable future because ICE was processing a travel document request for the petitioner. 2025 WL 1725791, at *4. The court rejected that argument, noting that the government "provided scant information" about "what concrete steps ICE has taken to process [the petitioner's] particular travel

10

document" and the anticipated outcome of that travel document request. *Id.* Here, the Government has similarly provided "scant information" about what "assistance" it has requested from ICE headquarters for a third country removal, and it has provided no information about the anticipated outcome of requesting that assistance.

Additionally, in *Hoac v. Becerra*, the government asserted that ICE's intent to apply for a travel document for the petitioner constituted changed circumstances. No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025). The court disagreed, explaining that the government failed to provide "any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around." *Id.* In this case, the Government also fails to show why Roble's removal to a third country is more likely in the reasonably foreseeable future, especially given that ICE was previously unable to remove Roble to a third country in 2019. ECF No. 1 ¶ 60.

This case is not a close call. Not only was ICE's release-revocation notice deficient, but even after detaining Roble for over a month, the Government still fails to show that his removal is any more likely today than the day he was released on his Order of Supervision. Because the Government plainly failed to meet its burden to show that, "on account of changed circumstances . . . there is a significant likelihood that [Roble] may be removed in the reasonably foreseeable future," ICE was not entitled to revoke Roble's Order of Supervision. 8 C.F.R. § 241.13(i)(2). Put simply, ICE broke the law when it re-detained Roble, so habeas relief is warranted.

**II.     Remedy**

It goes without saying that ICE, like all government agencies, must follow its own regulations.  *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (reversing dismissal of habeas petition in which the petitioner alleged that the Board of Immigration Appeals had failed to follow its own regulations).  Regrettably, that did not happen here.  Because Roble is "in custody in violation of the . . . laws . . . of the United States," he is entitled to habeas relief.  28 U.S.C. § 2241(c)(3).

As a remedy, Roble requests his immediate release, an injunction restricting ICE's ability to re-detain and remove Roble in the future, and an injunction barring ICE from detaining certain other noncitizens in Minnesota.  ECF No. 1 at 24–26.  Because Roble has not demonstrated a likelihood of ICE illegally re-detaining and removing him in the future, the Court declines to enter an injunction indefinitely restricting ICE's ability to re-detain him at some point in the future.[5]  *See Northland Ins. Cos. v. Blaylock*, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000) (explaining that "[p]ossible or speculative harm is not enough" to justify injunctive relief).  And Roble does not explain how success on his individual habeas petition demands a broad, class-wide injunction barring ICE from detaining a certain class of noncitizens in Minnesota.  After all, Roble has not brought this lawsuit as a class action, nor has he alleged that the Government's specific wrongful conduct has

---

[5]     The Government asserts that a pending class action in the District of Massachusetts prohibits this Court from entering a broader injunction restricting ICE's ability to re-detain and remove Roble in the future.  ECF No. 10 at 19–22.  The Court need not decide the impact of the pending class action on this case, because the speculative nature of the requested injunction provides an independent basis to deny this broader relief.

12

impacted anyone else but himself. The Court will thus follow the approach of other courts facing similar cases and order Roble's release from custody as a remedy for ICE's illegal re-detention of Roble. *See Nguyen*, 2025 WL 1725791, at *5; *Hoac*, 2025 WL 1993771, at *7; *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025).

## CONCLUSION

The law binds the government no less than the governed. Here, the Government failed to honor that sacred obligation. Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Roble's Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

2. The Government is **ORDERED** to release Roble from custody by no later than 5:00 p.m. CDT on August 27, 2025, subject to and in accordance with the conditions in his preexisting Order of Supervision dated October 21, 2019.

3. No later than 10:00 a.m. CDT on August 28, 2025, counsel for the Government is **ORDERED** to provide a declaration pursuant to 28 U.S.C. § 1746 affirming that Roble was released from custody in accordance with this Order.

4. Roble's Motion for a Temporary Restraining Order (ECF No. 2) is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 25, 2025                *s/Laura M. Provinzino*
                                      Laura M. Provinzino
                                      United States District Judge